(Decided 14th June, 1888.)

## ANDREW A. RHINEHART *vs.* MICHAEL SCHALL.

*Promissory note—Endorsers—Order of Liability—Accommodation paper—Burden of proof—Bona fide Holder.*

Where several persons endorse a bill of exchange or negotiable instrument, the legal effect is to subject them to each other in the order in which they endorse, the legal inference being that the payee is the prior endorser.

But this may be rebutted, and the relation of the parties towards each other may be shown by evidence to be other than that which the law presumes it is from the character of the instrument and the order of endorsement. Whatever the intention may have been it will prevail if proven.

An endorsement presupposes a consideration passing from the endorsee to the endorser, and of necessity precludes the presumption of a joint undertaking.

Although, in point of fact, in accommodation paper the endorsee may not pay actual value at the time of his endorsement, yet if he pays the note to the bank where it is discounted, and gets possession of it, he is a *bona fide* holder for value.

When a note is procured by fraud the burden of proof is upon the holder to prove that he is a *bona fide* holder for value.

Reinhart *vs.* Schall.

F. desiring to raise money procured from the defendant his note as accommodation paper, which he took to the plaintiff, stating that it was regular business paper which he could not get discounted without an "additional endorser;" whereupon, the plaintiff, to enable F. to get the note discounted, endorsed it, and it was discounted. Upon the protest of the note for non-payment, the plaintiff paid it as endorser, and obtained possession of it. HELD:

That in the absence of proof that the plaintiff intended to be a guarantor, or to assume a joint liability with the defendant, the presumption was that he intended to bind himself as endorser, and having paid the note was entitled as a *bona fide* holder for value, to recover from the defendant.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the two following prayers:

1. That if the jury shall find from the evidence that the defendant, A. A. Reinhart, signed and passed to Isaac Frazer the note sued upon, that the said Frazer put his name upon the back of the note, and the plaintiff then put his name on the back of said note, and he, the plaintiff, paid said note in Bank and got possession of it, as testified to by him under the commission, then the verdict of the jury shall be for the plaintiff for the amount of the note, and the jury may allow interest from July 13th, 1886.

2. That there is no legally sufficient evidence in this case that the plaintiff, at the time of endorsing the note sued on in this case, had any notice, or was cognizant, of any fraud in the procurement of said note from the defendant.

The defendant offered the five following prayers:

1. If the jury believe from the evidence that the promissory note sued on was an accommodation note,

and given by the defendant to the payee therein named, without consideration; and if they further find from the evidence that the plaintiff wrote his name on the back of said note under the name of the payee to enable the payee to get the same discounted; and if they further find that said note was not transferred to the plaintiff, and that the same was never in the possession of the plaintiff until he obtained it from the Bank, then the plaintiff was a guarantor for the payment of said note by said Frazer and cannot recover in this action.

2. If the jury find that the note sued on was an accommodation note obtained by Frazer from Reinhart fraudulently, they must find a verdict for the defendant, unless they find that Schall is a *bona fide* holder of said note for valuable consideration, without notice of such fraud, and the jury are instructed that the burden is on the plaintiff to prove that he is a *bona fide* holder of said note for valuable consideration.

3. That if the jury find that the note sued on was an accommodation note, and was given by the defendant to Frazer without consideration; and if they further find that the same was obtained under circumstances, as testified to by the plaintiff, then they may find from such facts and circumstances, testified to by the plaintiff in connection with the testimony taken under the commissions in this case, that the said note was obtained fraudulently from the defendant by said Frazer, and if they so find, then the burden of proof is on the plaintiff to show that he was a *bona fide* holder of said note for valuable consideration before maturity.

4. That the plaintiff cannot recover in this action, unless the jury find from the evidence that Isaac Frazer, the payee in the note sued on, endorsed the same to the plaintiff, and that the plaintiff is a *bona fide* holder of said note, and that the same has not been paid.

5. If the jury find that the note sued on was an accommodation note, given by Reinhart to Frazer, and that Schall put his name on the back of the note before Frazer endorsed it, for Frazer's accommodation, and that Frazer endorsed said note and negotiated it, then the jury are instructed that Schall is a joint maker of said note; and if the jury find that Schall has paid said note to a *bona fide* holder, then he can recover only one-half of the amount of said note, with the interest, in this case.

The Court (FOWLER, J.,) granted the plaintiff's prayers, and rejected those of the defendant. The defendant excepted, and the verdict and judgment being against him he appealed.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, BRYAN, and McSHERRY, J.

*George M. Sharp*, for the appellant.

*Alfred S. Niles*, for the appellee.

IRVING, J., delivered the opinion of the Court.

The promissory note which is the foundation of this action, reads thus: "Baltimore, March 10th, 1886—$575.00. Four months after date I promise to pay to the order of Isaac Frazer, five hundred and seventy-five dollars at 47 Lexington street, value received—(signed,) A. A. Reinhart." This note was endorsed "Isaac Frazer," "Michael Schall," and at the trial the words "pay to the order of Michael Schall" were written over Isaac Frazer's name. The note was discounted at Bank. Frazer failed. Reinhart did not pay the note at maturity. Schall paid the note to the Bank, took it up and now sues the maker for it.

Reinhart contends that Schall is not a *bona fide* holder for value; and that he was a guarantor of the

note and not an endorser; and that the note was procured from him by fraud. The history of the transaction as disclosed by the evidence is as follows: Frazer desiring to raise some money by discounting in a Bank, procured from the appellant this note as accommodation paper. Frazer then took the note to the appellee and told him this was a piece of regular business paper, which he could not get discounted without an "additional endorser," whereupon Schall, to enable Frazer to get it discounted, endorsed the note. When it became due it was protested for non-payment, and Schall paid it as endorser and got possession of it.

Being mercantile paper, the appellee was bound to the Bank as endorser, and having paid it he is entitled to recover from the maker the whole amount of the note, unless there be something in the transaction to change the relation of the parties to each other, so as to absolve the appellant, either in whole or in part, from liability.

Where several persons endorse a bill of exchange or negotiable instrument, the legal effect is to subject them to each other in the order in which they endorse; the legal inference being that the payee is the prior endorser. This may be rebutted, and the relation of the parties towards each other may be shown, by evidence, to be other than that which the law presumes it is from the character of the instrument and the order of endorsement. Whatever the intention may have been, it will prevail if proven. *Daniel on Negotiable Instruments, secs.* 703 *and* 704, and *Wood vs. Repold*, 3 *H. & J.*, 125. In any of these presumptions and aspects there is no difference between accommodation notes and those negotiated for value. *Wood vs. Repold*, 3 *H. & J.*, 125; *Yates vs. Donaldson*, 5 *Md.*, 400; *Shaw vs. Knox*, 98 *Mass.*, 214. "Every endorser," says Judge BUCHANAN in *Wood vs. Repold*, "is considered in law as

a several and collateral security." "An endorsement presupposes a consideration passing from the endorsee to the endorser, and of necessity precludes the presumption of a *joint* undertaking." That is the presumption of law growing out of. the nature of the instrument and the *apparent* relation of the parties to it; and although, in point of fact, in accommodation paper, the endorser may not pay actual value at the time of his endorsement, yet when he meets his mercantile obligation and pays the note to the Bank and gets possession of it, he is a *bona fide* holder for value. This, the authorities already cited abundantly establish, and they could be multipled indefinitely.

There is not the slightest evidence that the parties did not design their relation to this instrument, to be exactly what its form and the order of endorsement import. If Schall intended to be bound as guarantor, of course, what the parties intended will control; but, as already stated, in the absence of proof that he intended to be a guarantor, or to assume a *joint liability* with the appellant, the presumption is that he intended to bind himself as endorser. *Story on Prom. Notes, secs.* 479 *and* 480. The only proof on the subject is, that Frazer told Schall "this was business paper which he wished to get discounted, and he could not get the money on it without an" *additional* endorser "owing to a rule of the Bank requiring two endorsers, and he went on the note as security." That means just what Judge BUCHANAN states the effect of the endorsement to be, he was becoming a several security to whoever discounted that paper. There is no evidence showing he suspected it even to be other than an actual debt of Reinhart's. He says he paid it as endorser, to the Bank after it had gone to protest for non-payment. It is clear there was no understanding or agreement between the parties that Schall was becoming guarantor

instead of endorser, or that Schall was assuming a joint liability with the appellant. The appellant and Schall had no interview or communication about it. From what Frazer said to Schall he was entitled to think Reinhart owed the money which the note represented. Reinhart testified that Frazer had, before that time, when he was on a visit to him in Harrisburg, pointed out various properties he owned, and had said he was worth a hundred thousand dollars clear of the world, and that he was living in elegance and luxury; and as he had always dealt promptly with him, he gave the note without hesitation; but that *no representations* which he could recall *were made when he gave the note.* That after he discovered Frazer's insolvent condition he recalled what he said to him as he left him with the note: "No matter what happens this note will be taken care of," and concluded he was then insolvent and knew it when he made the statements about his worth and which were false, and that he would not have given him this note if he had known him to be insolvent or that his statements were untrue.

Contending that the note was procured from him by fraud, the appellant insists, that, under the decision of *Totten vs. Bucy,* 57 *Md.,* 446, and *Crampton vs. Perkins,* 65 *Md.,* 22, Schall loses the benefit of the presumption in his favor, and is put to the proof that he is a *bona fide* holder for value, and for this reason urges there was error in the refusal of the Court below to grant his second prayer, which asked the Court to instruct the jury that if they found the note was procured by fraud from the appellant, they must find for the defendant (appellant) unless they found "Schall was a *bona fide* holder of said note for valuable consideration, without notice of such fraud, and the jury are instructed that the burden is on the plaintiff to prove that he is a *bona fide* holder of said note for valuable

consideration." It would have been clearly misleading to the jury to grant any such instruction upon the proof in the case. At the instance of the plaintiff the Court had already instructed the jury, and very properly, that there was no legally sufficient evidence, that at the time of endorsing the note, Schall was cognizant of, or had any notice of, any fraud in the procurement of the note from the defendant. As there was no evidence of any such knowledge of fraud in procuring the note, nor any evidence rebutting the evidence of Schall that he had paid the Bank, and the inference of payment arising from possession of the note, the Court could not properly leave to the jury alternatives of which there was no evidence. It would have been equivalent to saying to the jury that they might find Schall had not paid value for the note of which he had possession; and that he did have knowledge of the fraud alleged in the procurement of the note, when there was no evidence on which to base such finding. The legal principle contended for was correct, but the evidence did not allow its application. As defendant's third prayer involved the same principle it was properly rejected also.

The first prayer of the defendant asked that the jury should be instructed that if they found the plaintiff was a guarantor, they should find for the defendant. We have already said that if there was evidence that there was an agreement, and an intention that he should become guarantor he would be so treated; but there was no evidence tending to rebut the legal inference supplied by the order of endorsement, and the express statement of Schall, and therefore the prayer was rightly rejected. For the like reason the fifth prayer relating to joint liability was properly rejected. The fourth was contradictory of the legal inference the paper supplied, and could not be granted.

New York, Phila. and Norfolk R. R. Co. *vs.* Coulbourn.

The plaintiff's prayers being consonant with the law of the case as we have already stated, were properly granted. The judgment must be affirmed.

*Judgment affirmed.*

(Decided 22nd November, 1888.)